Good morning, your honor. Say a plea for the court. Good morning. We are at Fuller on behalf of Segun Waldron. Your honor, the district court's finding of probable cause in this case was premised on an informant's mistake and on the dog's miss, both of which failed for similar reasons. There is a continuing assertion that the informant was reliable and that the dogs he had trained were insufficient to justify a finding of probable cause. It is incumbent on the government to establish that the source of the information and the informant's information as probable cause are reliable, because that's not what we take for granted early on. Well, if the information is corroborated factually by what the police find when they follow up, isn't that good enough? Your honor, it's true that corroboration can bolster an informant's tip, but there were several problems with the corroboration in the case. For one, the corroboration was limited to innocent facts, the fact that a car was parked in a particular spot that the car had been broken into. Those facts in particular are ones that would have been visible to anybody who was driving by. Let me ask you, I guess I don't see where there is the problem with this informant. Granted, it's an informant who's got some baggage from the past, but what is it about this informant that you think is so tainted? I guess I don't follow. To start off with, the problem with the informant is that, although under Illinois you look at the totality, that still takes into consideration the basis of knowledge and the informant's reliability. In this case, the basis of knowledge was the statement that you knew of a particular transaction. There's nothing from that. The language suggests distance. It doesn't say anything that assures support that this was a rumor that was circulating in the underworld. As far as reliability, there was simply a conclusion statement that the informant was reliable. There was nothing, and that was on cross-examination, in fact, that he proved reliable. There was nothing regarding the informant's track records. There was nothing suggesting that he had given information which had concretely proved true and that had led to a search warrant, to an arrest, to an indictment, something like that. Is that necessary? You have to, for reliability, you have to have a, what's the criteria of this track record you think is necessary? I think both the Spinelli case and the Miller case, both of which we studied in our brief, say that simply telling the magistrate, and the Miller is a warrant case, but in the context of the warrant, simply saying that the informant was reliable is not sufficient. Without additional evidence regarding the informant's track record, and concrete evidence that said his information was reliable, and that's in Spinelli. But that's, if it's a warrant case, that's what you're telling the reviewing magistrate judge, what that individual judicial officer knows in terms of whether or not to issue the warrant. Here it's a warrantless situation. So we have to look post hoc at the record of this particular informant. That's true. But of the two cases, Spinelli and Miller, both of which are cited along with, I believe, the seventh circuit case in our brief, one of them was a warrant, one of them was an informant. I don't remember which was which. But either way, the criteria can change. There must be something more than a conclusive statement that the informant was reliable. And that's my central problem with the informant and the case. The problem with the corroboration, again, with an intent to backstab somebody who was driving by, they didn't hear some of the very concrete facts. Am I correct? Maybe you make it sound as if they arrested him just on the basis of the tip. And if I understand it, there was a lot of police work that went on in between. There was corroboration of the tip. There was the district court pointing to three things. The informant's tip. Second was the dog sniff, which was saying that because there was no evidence or indication that the dog was reliable, that that should be a nullity, that that should not count in the probable cause analysis. And the third was that he had not responded to calls. Right. He took it for repairs, and then he didn't respond to their calls to pick it up. And he had told the hotel people the day before that they should keep an eye on the car. All that stuff. Yeah. Right. But there were phone records establishing that he made multiple calls on the 5th, multiple calls on the 6th, multiple calls on the 7th. The dealership was closed. There were no calls on the 8th, and the dealership was closed on the 9th. But because of that, I think it is an equivocal fact. It could mean that he knew. They left it there. It was equivocal. Okay, so they left it there. He left it there. And then they ran the dog sniff. And what we're saying is that because there's only evidence that the dog was trained, training is actually a poor proxy for the lie detector. But you didn't, as I understand it, in the district court, there was no issue with respect to the dog. It wasn't even brought up that you had a problem with the dog sniff part of it. That's true. And the government has claimed that the dog sniff is waged. But this court's precedent in the Arnold case states that while claims can be waived, claims are not. Here, clearly, the claim that probable cause did not exist was preserved. And based on the Beal case that you cited, once probable cause is issued, or to the extent the government wants a dog sniff to constitute probable cause, it has the burden to establish that the dog is reliable. In the Fernandez case, it says that a dog who's alerted to a bag, if there's not that other evidence that the dog is reliable, is worthy of almost nothing. But if you didn't raise the issue below, what's the context in which this demonstration of the dog reliability is supposed to have been developed? I mean, the government wouldn't be expected simply to come forward with this information when no one is causing any question with respect to the dog. In fact, I think that is what we require, that there is some baseline showing, which the government could have made here but didn't, that the dog had been trained a certain amount of time, that there was a particular error rate that the dog had been on the job. But the government didn't know you had any question about it. I mean, I don't understand how it's fair to say, well, they should develop an issue that you haven't indicated is an issue you wish to address. It doesn't make any sense. I still think that's what the DOJ says, which is that if the government wants to use it to get toward its burden of establishing probable cause, just like if it wants to use an informant, it has to establish that informs reliability. Counsel, can I ask you a question, Judge Gould here? So here's my question. Assuming that if the dog sniff was standing alone, the government would have more of a hurdle to show track record for reliability, et cetera. Why isn't it enough that the dog was trained and the dog alerted with a sniff as part of the corroboration of the CI? Given the CI said something, we're not viewing the dog sniff in isolation. We've got the dog sniff as a possible corroboration of the CI, and the CI as a possible corroboration of the dog sniff. Now, why in the total circumstances wouldn't we be able to look at all of them? Of course, the court does look at all of them. Our argument is that the dog sniff shouldn't weigh at all in the probable cause category. What's your strongest authority for that? I think that's the Beale case and Fernandez, which are the cases that say that without establishing a record of reliability, a dog sniff is, I haven't been able to reserve it. Okay, you may. May it please the court. Eric Silver on behalf of the United States. What the defendant does here is precisely what the Supreme Court counsel against doing around these cases, which is to divide and conquer the facts of the case. The district court would give out an isolation, say this one is without a minimum weight, and this one is innocent. The court here had the totality of the circumstances. It had a known informant who faced consequences. He or she provided false information, which this court in Rolland indicated is a significant factor in weighing the reliability of the information that was provided. We have a known motivation for this confidential source to provide information, which again in Rolland this court indicated is one of the advantages of knowing who the confidential source is. Here we know that the reason the information was provided was for a hope of leniency or monetary gain. This court indicated Tatian Soriano. That goal can't be achieved if the defendant provides false information, which again is the reliability of the information that was provided. Finally, we have the statement, at least as to the veracity of the confidential source, that he had provided reliable information in the past. This isn't a conclusory statement as shown, which was just as a confidential reliable informant, nor is it like you had in the Seventh Circuit case, the defendant's life curved in which you just have this person is believed to be reliable. What you have is testimony from Special Agent Smith that he's used this person in the past. He said it's over a roughly three-month period. Other agencies have used this person, and the person has proved reliable. This is like the showing that was made in Jones, the Supreme Court case, in which it was said that the person had provided correct information on previous occasions, and the Supreme Court credited that, and it's like Draper, in which the informant there had provided information from time to time and proved reliable, and the court credited that. Putting aside for a moment your totality argument, I understand that. If we are looking just for a moment at the dog sniff, your counterpart indicated the Beal case and the Fernandez case stands for the proposition that it's your obligation, the government's obligation, to establish the reliability of the dog if you're going to rely upon that as part of your probable cause showing. What's your response to that? Well, I think for the moment it is our responsibility that if we're going to rely on it alone to establish probable cause, not as part of a probable cause showing, but if we just walked a dog around this dealership, and all the evidence we had was all loaded to a car, we would have that burden. But still, Rule 12b puts a burden on the defendant to raise objections in district court, and this issue was pointed out. We relied on the dog sniff, cited Brigham and Seltzer. The district court at Exeter Record 140 suggested the dog sniff alone would survive probable cause. In response to this, the defendant didn't say, didn't raise questions about the reliability of the dog or even said there's no evidence in the record to support that. And so I do think this is a case of waiver. Even if it's not waiver in this circumstance, we're left then with the record that we have, which is the government introduced some evidence of reliability, which is the training of the dog and it was an active service. It may not be that that's the best evidence we could have had, and it wasn't. We could have provided more evidence than that. But I think what's clear is when we provide some evidence of training, the defendant provides no evidence. The evidence here supports reliability. It's not a strong showing, but when the defendant doesn't contest it, it is some showing. I would also point out, which I think is important, is that even if we don't establish enough reliability to rely on the dog as a sole basis of probable cause, this court and other courts' precedents support relying on it in the totality of the circumstances. In Spetz, you had two dogs that were at issue there, one of which had been fairly accurate in the past, and one had been wrong four or six times and had been used. The court didn't say in Spetz you couldn't rely on that dog, that it had been inaccurate four times. What the court did say there is you could rely on it to corroborate the other dog. Similarly, in the $67,000 to $220,000 courtesy case in the Pembroke sites, there there was no evidence that it was frustrated. It was decided it was the Sixth Circuit. The Sixth Circuit, in that context, didn't say, without that evidence, this is entitled to no weight. What it did say is it was probative of a weak weight, and then considered it in the totality of the circumstances and found probable cause based upon it. Those are not novel propositions. All we're asserting here is in the limited circumstances of this case, we're relying on it for corroboration of what the confidential source said, as opposed to the full showing of probable cause that what was done here was sufficient. I also wanted to go to the corroboration of the confidential source. The corroboration that was done here was detailed. It was specific. It was that there was an African-American male with a black H2 Hummer with North Carolina plates. It was located at a specific hotel, the Holiday Inn at LAX. There were specific details that were provided about the break-in. There was that the window was broken, that the steering column was damaged. There was that the security guard had tried to chase away the individual. These are specific facts that the police, that officers, track down in this case. And it's those specific facts that corroborate what the confidential source said. Again, here to start with, we have a reliable confidential source, which shifts the scale heavily towards finding reliability in general. And also not all of those facts are innocent. It's not innocent. In fact, part of the court's reliance here was that there were suspicious facts in this circumstance. The defendant's response to him being told his car was broken into wasn't to call the police. It was why don't you watch it. In fact, the record indicates there was no police report filed in this case. He takes it to the dealership with a sense of urgency of getting the repairs fixed. He has only the steering column fixed, not the window, which suggests get it done as quickly as possible. The police get evidence that he was supposed to have checked out of the room prior to this incident and had to pay money to stay. Beyond this, he suggests also a sense of urgency. He tells the dealership, as soon as the repair is done, give me a call and let me know. Then we have the evidence after that, when the police arrive on March 7th, that the defendant's been told his car is ready, the dealership has called him repeatedly, and he hasn't come and picked it up. The court was permissible in that circumstance and viewed those as suspicious circumstances, unlike the innocent facts you have in other cases. And I want to say something for a moment about the phone records. As the defendant points out, there are phone records here. First, the question is what information the officers had at the time, not what evidence would show outside of the record. Here, the court had exited a record in 143, and 143 credited Detective Rochette's statements that the dealership had told them the defendant had been told his car was ready and hadn't picked it up. The other thing I would say about the phone records is they actually confirm what was said here, which is there are 16 calls on March 7th up until 11.15 a.m., March 7th, the day the police arrived at the dealership. Then from March 7th on to the morning of March 10th, there are no calls during that time frame, which I think confirms what the dealership said, the defendant is not calling during that time, which at least gives a suspicion that he's on to them. It is at a minimum a suspicious circumstance. I take it this was under surveillance during that period? The car was under surveillance during that period. In fact, there had been an incident at the hotel. This is at Exeter Record, page 120 and 121, in which the hotel had kicked the FBI special agent off the hotel grounds, saying that they thought the badge was fake and the recipient of the vaccine was fake while she was surveilling the car. In the context of that information, when there had been a break-in to that car, I think it's reasonable to infer that the hotel manager then told the person who owned the car. So again, in the totality of the circumstances here, the court at Exeter Record 137 said there was an ample problem. Okay. If the panel has no further questions, we will sit down. There don't appear to be any questions. Thank you. I just have a very brief point. First, I would point out that at Exeter Record 35, which is part of the government's briefing below, it admitted that its informant had some motivation to lie. Correct. And clearly, even though a person is trying to work off a case, it doesn't give them every motivation to pass along any rumor that they hear. Most informants do. Most informants do. That's right. And it does still give them a motivation to pass along information that they might hear or that they know of. Right. That's why we have a little higher standard. Correct. And as far as the three-month period that the informant had been working, without evidence of what he had done during that period, I don't think the fact that he had been working with them for a period of time is probative of his reliability. Finally, I would just point out that … But you wouldn't say that we would deem him not reliable simply because a particular case hadn't been brought or a … I mean, in other words, you're not suggesting that there is some objective criteria, a box you have to check that an informant has accomplished a particular case. Of course not, or else an informant could never get that track record. But what I'm saying is there does have to be something more or less realistic in his life, which is essentially what we're seeing out here. Finally, I would say that Rule 12B, which the government is relying on for their waiver argument, only requires that the motion just suppressed be raised before trial. It doesn't require that the Polaris go on and Arnold cases are much closer on point, that it's only claims that can be waived, not arguments. All right. Thank you. Any other questions? The case just argued is submitted for decision. We'll hear the last case, which is United States v. Lechina.
judges: Seeborg, Schroeder, Gould